KENNEDY, S.
On the 28th of March, 1881, Reuben P. Wilcox, of the town of Brookfield, died, leaving a will which gave to,his widow the use of all his real and personal estate, '.during ..¡her. life, and at her death the residue cwas .bequeathed to his legal heirs. The will was subsequently admitted to probate and Orlando Woodard, named therein as executor, duly qualified and entered upon the • discharge of his duties. Mr. Wilcox, at the time of his death, was the owner and in possession of a farm of two hundred acres in Brookfield, and also the owner of another of sixty-two acres in Oswego. Immediately after the death of her husband, Mrs. Wilcox entered into possession of the farm in Brookfield, and assumed its control and manage *163 ment, Mr. Woodard aiding, assisting and advising with her in regard to the same, and was permitted by her to receive a large portion of the money resulting from the sale of the products of the farm. They appear to have acted in non-cert and harmoniously in conducting the business for the season of 1881 until late in the fall of that year, when she served a written notice upon Mr. Woodard that she had decided not to accept the provisions of the will, but had elected to take dower in her husband’s estate, and also demanded an accounting of the avails of the farm which came into the hands of Mr. Woodard during that season. Notwithstanding this demand he rendered no account to her for her share of the profits of the farm since her husband’s death, whereupon on the 19th day of December, 1881, Mrs. Wilcox commenced an action in the supreme court against Orlando Woodard, as executor of the last will and testament of Eeuben P. Wilcox, and also against other persons who had, or were supposed to have, an interest in the land or crops raised by her since the death of her husband, for the purpose of having her dower admeasured and set off to her, and also for the further purpose of recovering from Mr. Woodard her share of the avails of the crops raised on the farm during the season of 1881. She also alleged that no personal claim was made against any defendant except said Woodward, executor, and the heirs of Eeuben P. Wilcox, deceased/ " '
The defendant Woodard interposed an answer,—and amongst othei defenses. alleged that the facts and allegations of the plaintiff’s complaint did not constitute a cause of action against him as-executor of the will of Mr. Wilcox or otherwise, that he was not a necessary or proper party, to the action, and that a cause of action to recover her dower could not be joined, with a cause of action for an accounting as executor, or otherwise.
The action was referred to Hon. Charles L. Kennedy to hear and determine, and was subsequently tried before him and the plaintiff’s dower in the Brookfield farm duly assigned and set off to her.
The thirteenth finding in Judge Kennedy’s report is as follows: “That the gross proceeds of the rents and profits of the said real estate, since the death of said E. P. Wilcox, deceased, for the year 1881, was the sum of $978.73, of which said Sarah A. Wilcox received $172.82 and the said Orlando Woodard, executor, received the sum of $805.91. That the actual expense of producing said profits and income was the sum of $449.35,. of which said plaintiff, Sarah A. Wilcox, paid and furnished the sum of $217.71 leaving as the net profits of said real estate the sum of $529 28, and that plaintiff is entitled to receive and to be *164 reimbursed the sum of $217.71 as balance of the expenses paid and incurred, and the further sum of $176.46, being one-third of the net profits as aforesaid, leaving in the hands of Woodard, executor, defendant, the sum oi$352.92, being two-thirds of the net profits to be accounted for by him to the proper heirs at law of said Reuben P. Wilcox, or in some other manner provided by law, or for the costs .of these proceedings.”
One of the conclusions of law found by the referee was the following: “ Fourth, that said plaintiff Sarah A. Wilcox is entitled to recover of and from the defendant Orlando Woodard as such executor her costs and disbursements of this action to be taxed, and that said defendant Orlando Woodard is also entitled to recover his costs and disbursements of this action, and judgment is hereby ordered accordingly.” At a circuit and special term held at Morris-•ville on the 16th day of October, 1882, Mr. Justice Follett presiding, the referee’s report was duly confirmed and an ■interlocutory judgment entered. This judgment directs the payment of the plaintiff’s costs out of the rents and profits in Mr. Woodard’s hands and also directs the payment of the executor’s costs out of the same fund, so far as the same was sufficient for that purpose find that the remainder of his costs shall be paid and allowed to him on final accounting or settlement of the estate of said Reuben P. Wilcox deceased by said Orlando Woodard executor as aforesaid.”
'• At a special term held at Syracuse on the 30th day of June, 1883, Mr. Justice Churchill presiding, a motion was made to confirm the report of the referee appointed to admeasure the dower. The report was confirmed and the order awards the plaintiff an extra allowance of $30, and directs the payment of this sum and all of plaintiff’s other costs out of the rents and profits so far as the same shall prove sufficient, “and the remainder, if any, be paid from the other assets of the estate in his (Woodard’s) hands as executor.”
At a special term held in Norwich on the 30th day of July, 1883, Mr. Justice Follett presiding, a motion was made to correct the interlocutory judgment by striking out the direction that the plaintiff’s costs be paid out of the fund arising from the rents and profits. The motion was denied, with costs “payable out of the fund in controversy,” and with this decision Judge Follett filed this memorandum : “This action was brought to enforce the plaintiff’s rights in specific real estate and in the profits arising therefrom. She recovered. The general rule in such cases is to charge the land or fund with the costs unless the defeated party is charged personally. There is nothing in the referee’s re *165 port to indicate that the costs should be charged against .the estate generally, and it clearly appears from the report that the defendant is not to be charged personally. I think that the plaintiff is clearly entitled to costs out of the fund.”
The personal estate of the decedent has been exhausted, or nearly so, in expenses of administration and the proceeds of the sale of the real estate by the executor are not sufficient to pay more than sixteen per cent of his indebtedness, and, if the costs of this and other litigations are allowed to the executor upon this accounting, they must be charged over to the real estate and paid out of the money arising from the sale of the land.
The counsel for the executor and for Mrs. Wilcox insists that the question of the payment of the $110.05 of the plaintiff’s costs mentioned in the judgment, and Mr. Woodard’s costs, $151.46, also therein mentioned, out of the fund arising from the sale of the real estate, is res adjudicata and cannot be disturbed by the ¡surrogate.
We cannot adopt this view for the following reasons:
The will gave the executor no authority over the real estate, and it was no part of his duty as executor to take charge of, or to do any act in relation to it, except when it became necessary to institute proceedings for the payment of the decedent’s debts. Whatever he did in relation to the management of the real estate he did, not as executor, but in his individual capacity, and if, by reason of such acts, he incurred any liability to pay costs, he should pay them himself, and there is no reason in law or equity why this estate should be called upon to pay them. Neither the creditors or this estate had a dollar’s interest in the result of the litigations, and could in no way be legally effected by it, and to hold that the only persons having an interest in this estate are concluded by a judgment to which they were not parties, made in a litigation in which they had not the slightest interest, would be the height of injustice.
Every transaction out of which the claim of Mrs. Wilcox arose for an accounting was subsequent to the death of Mr. Wilcox. It was for the avails of crops grown by her upon the farm while she, and not the executor, was in possession and had the control and management of it. In all that Mr. Woodard did he was acting as her friend and agent and was under her authority. If he sold the crops and received the avails of the farm produce he did it upon his own responsibility or as the agent of Mrs. Wilcox. She simply had a demand against him personally for her share of the avails of the farm and not against him as executor', for he did not and could not legally act as such in assisting her in the management of the farm. The fact that the action *166 was brought against him as executor did not change the nature of her claim nor of his defense, if he had any, nor relieve him from personal liability for costs. The judgment of the court was that the avails of the farm for the season of 1881, were not the property of the estate, but belonged to others. It would be grossly unjust if executors, without any authority whatever, could enter upon the lands of others or take part in their management, and when called upon to pay over the avails of their cultivation which they have received, to the rightful claimant, refuse to pay without litigation, and, if defeated, have the costs of both parties paid out of the estates of which they may happen to be at the time executor. We think we are amply justified in holding that an action cannot be maintained against an executor in his representative capacity upon a transaction which occurred after the testator’s death. The executor is liable in such cases individually. Ferris v. Disbrow, 22 Week. Dig., 330; Buckland v. Gallup, 40 Hun, 60; Ketchum v. Ketchum, 4 Cow., 87.
The total amount of the costs and expenses of that litigation, as presented to us by the executor for allowance, is as follows:

Besides the above sum, Mr. Woodard paid $295.28 out of the “fund” arising from the rents and profits of the farm, making, if allowed, the total costs of this unnecessary litigation, so far as this estate is concerned, the sum of $1,117.58, and this estate is asked to bear $822.30 of it. We believe the whole of it to be an unjust, illegal and inequitable claim and that the supreme court had no jurisdiction to decree that any portion of the costs should be paid out of the assets of this estate and so far as it does make sucha decree, that it was inadvertently made by the court.
No creditor of this estate, at least not Mrs. Cook, was a party to this litigation and hence were not in a situation to oppose the entry of the decree which has been entered in the action, nor have they been at any time since its entry in a situation where they could ask the court to modify it in their interest or in the interest of this estate. Nor is any other person that we are aware of so situated that he can, upon this proceeding, oppose the enforcement of this *167 decree save by the action of the surrogate in disregarding it. Where an estate is thus situated we believe this court has the right upon its own motion, to appear in the courts of this state and be heard in opposition to a decree obtained in the manner and for the purpose that this one was which we are asked to obey. Were it otherwise a surrogate’s court would be compelled to allow large sums of money to be taken from creditors and heirs upon decrees •of other courts, obtained by parties interested in shielding ■ themselves from the expenses of litigations which their own acts have brought upon them. We shall, therefore, hazard the criticism, possibly the censure, of the supreme court, in respectfully disregarding its decree in the above-mentioned action.
Another reason for the disallowance of the costs above-referred to, and the expenses and disbursements of Mr. Woodard in this action will be stated in connection with the discussion in regard to the claim of Eosina Cook against this estate and the expenses of the executor in resisting the payment of her claim.
We now come to the discussion of the claim of Eosina Cook. It will be remembered that the decedent died the 38th day of March, 1881, and his will was admitted to probate June twenty of that year.
At the time of his death Mrs. Cook, of St. Johns, Michigan, was the owner and holder of a promissory note against him of which the following is a copy:
“ $3,100. March 29, 1878.
“ Six years after date I promise to pay to the order of S. B. Daboll, three thousand one hundred dollars for the value received with use.
“B. P. WILCOX.
“Indorsed S. B. Daboll.’”
The executor duly published a notice to creditors and on the 18th day of March, 1882, the claim in question was duly presented to the executor and the same was disputed and rejected by him, and the objection was accompanied by an offer to refer the claim under the statute, but the ■executor having refused to waive the objection that the note was not yet due, and at all times insisted that no action or proceeding could be commenced upon the same until it became due, a reference was deferred until the note matured. On the 29th day of December, 1884, the claim was referred under the statute to three referees.
After a trial upon the merits the referees made their report awarding to the plaintiff the full amount of her claim. Their report was duly confirmed, and on the 17th day of May, 1886, judgment was duly entered thereon for

*168

The petition for the sale of the decedent’s real estate was filed on the 22d day of May, 1882,_
The petition refers to the claim in question as having been presented to the executor and rejected by him. Mrs. Cook was duly cited in the proceedings, but did not appear and made no effort to prove her claim upon the first hearing.
On the 17th day of March, 1883, a motion was made be- , fore Surrogate Chapman to open the decree on July 25, 1882, for the purpose of allowing Mrs. Cook to prove her claim and have the same established by and as of the date of said decree.
The surrogate denied this motion upon the ground that the claim was not then due, and without prejudice to its renewal.
The motion was renewed before the present surrogate . on the 22d day of July, 1885, and was denied by him for want of jurisdiction, more than one year having elapsed since the entry of the decree.
Mrs. Cook’s claim has been duly proved and established upon the hearing for distribution.
The proceeds of the sale of real estate are not more than sufficient to pay the claims' established upon first hearing.
Upon these facts a serious question arises as to the status of Mrs. Cook’s claim in this proceeding.
Counsel for Mrs. Cook contends that she is entitled to. share pro rata with the creditors whose claims were established upon the first hearing, and counsel for the executor urges that the claims established upon the first hearing are entitled to payment in full before any portion of the proceeds can be applied to the payment of the claim in question.
The only serious question in the case arises from the fact, that at the time of the entry of the first decree the claim in question was not yet due.
The Code of Civil Procedure (section 1758) provides: “The decree must determine and specify the amount of each debt established as a valid and subsisting debt against the decedent’s estate, etc.,” and a “debt” is defined by the-Code of Civil Procedure (sec. 2514, subd. 3), as follows - “The word ‘debts’ includes any claim or demand upon, which a judgment for a sum of money or directing the payment of money could be recovered in an action; and the *169 word creditor ’ includes any person having such a claim or demand.”
In several places in chapter 18, claims which have not matured are referred to, not as “debts,” but always as- “ debts not yet due.”
Mrs. Cook’s claim was not due at the date of the first decree; she could not at that time be said to have a “valid and subsisting debt against the decedent’s estate;” she could not then have instituted proceedings for the sale of the real estate; she could not have established her claim upon the first hearing.
There is no provision anywhere in title 5, chapter 18, for the proof of a debt not yet due, upon the first hearing, and Mrs. Cook, for that reason, was not bound to present her claim at that time, and loches cannot be attributed to her on account of her failure so to do.
In this view of the case the motion to open the decree should have been denied upon the merits as unnecessary and superfluous.
Under the Revised Statutes (sections 37, 38, 39, 43,71 and. 73),.claims proven upon the second hearing stood upon an equal footing with those established by the first decree, and there was no preference or priority of payment as between debts of the same class.
But by the Code of Civil Procedure a radical change was introduced, and under the present law there can be no doubt that those claims which were established by the first-decree are entitled to priority of payment over those proven upon the hearing for distribution, unless there exists a single exception, in favor of a “debt not yet due.”
The serious question in this case, therefore, arises upon the construction of subdivision 7, section 2793, of the Code of Civil Procedure, which reads as follows:
“ Out of the remainder of the money must .be paid, in full, the other debts, which were established and recited in the. first decree, and were not rejected upon the second hearing; or if there is not enough for that purpose, they, or so much thereof as the money applicable thereto will pay, must be paid in the order prescribed by law for payment of a decedent’s debts by an executor or administrator out of the personal assets, without giving preference to rents, or to a specialty or to any demand on account of an action pending thereupon, and paying debts not yet due upon a. rebate of legal interest.”
The section is ambiguous and is inartificially drawn, and at the first glance there would seem to be doubt as to its-true construction and meaning; but upon a careful examination of the section in connection with the revisers notes- *170 and the former statute, we are convinced that the true meaning and intent will be better arrived at by transposing the words after the second semi-colon (“and paying debts not yet due, etc.”), to a position immediately after the. words “second hearing,” before the first semi-colon, thus placing debts not yet due upon the same footing with those satisfied by the first decree.
This is the only construction that gives the subdivision an intelligible meaning, and the last clause of the sub-division would be utterly meaningless under any other construction that has been suggested.
If the legislature had intended that a debt not yet due should be postponed to one which was due, they would have provided for its payment in sub-division 8; but it appears that the only provision anywhere in the whole title for proving or for paying a debt, not yet due, is contained in sub-division 7, and provision for its payment being made there, and there only, the conclusion is irresistible that it is to be paid with the other debts provided for in that subdivision.
We believe too that this construction will tend to do substantial justice in all cases.
Under the construction contended for by the counsel for the executor, creditors whose claims are not due at the death of the decedent will be entirely at the mercy of the executors or administrators, who through favoritism or .from enmity could so constitute and conduct the proceedings as to unjustly and unfairly discriminate between credi tors whose claims are equally just and equally entitled to payment.
There is no reason why in justice and fairness a claim against a decedent’s estate, which is due, should be preferred to another which is not due, and such is not the policy of the law.
This is emphatically indicated by the provisions of the ‘Code of Civ. Pro. (§ 2742,), with reference to the payment of a claim not yet due upon the judicial settlement of the accounts of an executor or administrator.
Ample provision is here made for the protection of a creditor whose claim is not due upon the same basis as one which is due, and while this is not controlling in this case, yet it is a strong indication that the legislature regarded the two classes of claims as equally entitled to payment.
We are strongly re-inforced in our opinion by the notes of the revisors. Section 38 of the Revised Statutes, provides for the payment of all the decedent’s debts in full, or in case of a deficiency of assets, in proportion to their respective amounts. Section 39 provides that a creditor *171 whose debt is not yet due shall receive his proportion with other creditors upon a rebate of legal interest, substantially the same as the last clause of sub-division 1, § 2T90.
The revisers say: “ Sub-division 1 has been taken from sections 38, 39 and IS of the Revised Statutes without material change, except by the addition of the words which connect the provision with sub-division 8, and by the insertion of the provision with reference to the order of payment among creditors.
From this language the fair inference is that there was no intention to change the status of a debt not yet due.
The revisers further say: “ Sub-division 8, is new. It applies to creditors who come in after a sale as provided in section 2188. The regulation which it introduces appears to rest upon plain principles of justice, especially in view of the amendments to the preceding sections giving to any creditor the right to institute original proceedings; of his right which the amendments preserve to come in at any time before decree when proceedings have been instituted by another creditor; of the great publicity required at every step before the decree; and of the embarassments which will result from the debts subsequently proved, if there is any deficiency. Under such circumstances creditors who neglected to come in until after the decree should be postponed even when no other property remains, to those who have been diligent to prove their debts in season, and have, perhaps, borne the expense and labor of the proceedings.
Hone of this reasoning is applicable to the case before us.
As we have seen, Mrs. Cook was not, at the date of the first decree a “creditor” and her claim was not then a “ debt ” within the meaning of the statute, and she could not thus establish it. It cannot therefore, be said that she was guilty of loches in not then attempting to establish it.
After a troublesome and expensive litigation she has had the justice of her claim established by law. She has not neglected any proper or necessary step to bring her claim to the attention of the court; and now for the first time she has an opportunity to prove and establish it in this proceeding.
Every consideration of justice and equity, and we believe, the - plain language and direction of the statute itself, require that she should now be placed upon an equality with the other creditors.
The order of distribution will be made accordingly, and the claim of Rosina Cook (exclusive of costs) be paid joro rata and in proportion to its amount with the other' creditors.
Upon this accounting we are asked by the executor, against the objection of Mrs. Cook’s counsel, to allow out *172 of the proceeds of the sale of the real estate his expenses in. defending the suit of Mrs. Cook, amounting to about $600, as well as his costs and disbursements in defending the Wilcox action for dower and an accounting, amounting to-$822.30. In addition to the reasons heretofore stated for disallowing costs in the Wilcox Case, we decline to do so for the additional reason that there is no provision of law which justifies or provides for their payment out of this fund. Independent of any question as to the necessity or propriety of the large expenditure of the executor in litigations, it may be seriously doubted whether under any circumstances this expense could be charged upon the real estate or provision made for their payment out of its proceeds. The law makes no provision for the sale of real estate to pay costs of litigations or the expenses of administration; on the contrary, it provides 'that the real estate of a decedent cannot be sold by the executor or administrator except for the payment of his debts and funeral expenses. Code, § 2749. Even where a judgment is obtained .against an executor upon a disputed claim, the costs in such a judgment cannot be paid from the proceeds of the real estate. Code Civ. Pro., § 2757. In short, the policy of the law seems to be to carefully guard against the payment, from the proceeds of the real estate, of any claim or demand except a debt owing by-the decedent at the time of his death, his. necessary funeral expenses, and the actual expense of the proceeding for the sale of the real estate. Were this not so, the Code would not have restricted the claims for which land must be sold to the payment of the decedent’s debts and funeral expenses, but would have permitted the executor or administrator to sell the lands for any claims which he might have, arising from expenses incurred by him in the administration of the estate.
The language of subdivision 7, section 2793, is imperative as to the class of debts which may be paid under its provisions. It says, “out of the remainder of the money must be paid in full the other debts which were established and recited in the first decree, and were not rejected upon the second hearing,” thus devoting the fund to the payment of certain specific debts and preventing its diversion for any other purpose whatever.
It would be a useless expense, many times, for a creditor to prove his claim in such a proceeding if the statute did not afterwards protect _ his debt against the claims of executors for expenses incurred, either before or after he-is cited to establish his debt in court. The decree of the-surrogate upon the first hearing becomes, in fact, a lien upon the proceeds of the sale of land and thus secures pay *173 ment of the debts established on the first hearing, if sufficient for that purpose, against any contingency. No mortgage or judgment could make it more secure than this decree of the court against the subsequent acts of executors, or against those creditors who. neglected to establish their debts when invited by the court to do so. The law has wisely appropriated this fund to the payment of those debts which the decedent created in his lifetime, and in our judgment we have no authority to use it for any other purpose. Nor is it any hardship upon, or injustice to an executor thus to hold the law to be, for before he prosecutes or defends an action or subjects an estate to any expense beyond which the law has made provision, he has ample opportunity to ascertain the exact amount of the assets of the personal estate, and then to determine what his course shall be. In plain and unmistakable language the law has said to him that the real estate of a decedent cannot be sold for any other purposes than those we have stated and we know of no reason why he should not act accordingly. Had all the expenses, which this executor has incurred in his litigations, existed before any proceedings were taken to sell the land for the payment of debts, he would then have been compelled to see the land of the decedent ordered sold for the payment of debts existing at the death of Mr. Wilcox, for he could not have proven his claim in that proceeding nor made use of it to institute measures for the sale of the decedent’s land to procure its payment, so that, at no stage of his administration, has it been in the power of the court to aid him in the collection of his disbursements ic the litigations in which he has been engaged out of the real estate or its proceeds, and his application to be repaid in this, manner, for this class of expenses, must, therefore, be denied. It may be claimed that under the provision of subdivision 5, section 2793, these expenses may" be allowed as against the real estate, but, in our opinion, this provision is only intended to cover payments made by an executor or administrator on account of debts of the decedent and funeral expenses.
But there are other grounds for rejecting the claim of the executor to be reimbursed the expenses of the Cook-litigatian. They are as follows: At the time her claim was referred the condition of the estate was nearly as follows:
Total amount of the proceeds of the real estate... $1,731.00 Total amount of personal estate................. 483.00
$2,214.00
*174 Claims of creditors allowed by the surrogate on proceedings to sell the land of Mr. Wilcox... $1,195.00
Expense of proceedings to sell land.............. 596.00
Costs and expenses of Wilcox suit.............. ' 822.00
$2,611.00-
So that the estate, according to his figures, was utterly bankrupt. There was not a dollar which could be reached by Mrs. Cook, if she got a judgment, provided the law is as claimed by the executor. If so, why subject her to the costs of a litigation which would be fruitless in the end. But one motive is apparent, because but one result could be obtained, and that was to subject the assets of this estate to a further reduction by means of costs and expenses, and thereby deprive, if possible, creditors whose claims had been proven and established in the first decree, from any share m the avails of the real estate. Such is the result as shown by the claims of the executor presented for our consideration, for his total claim amounts to the sum of $2,815, while the total avails of the estate amounts to the sum of $2,21é. But not content with deciding to contest the note, the executor compelled Mrs. Cook to wait two years before referring the claim for trial upon the frivolous pretext that it was not due, thus unnecessarily delaying the settlement of the estate, preventing creditors from receiving the amount due them and subjecting the estate to many hundred dollars interest. This claim, if the executor had not needlessly raised the technical objection that the note was not due, could, although disputed, have been tried before the surrogate in the proceedings to sell the land, or it could have been referred to some referee, approved by the surrogate and tried, and thus the useless and vexatious delay avoided. No interest upon debts would have accrued, the expenses incidental to such delay in the settlement of estates would not have been incurred, and the estate settled within the eighteen months usually taken by executors for that purpose. For four years this executor has prevented this estate from being settled by his litigations and the manner with which he has conducted them, and in that time has accumulated a bill of costs and expenses amounting to a sum sufficient to bankrupt it provided the view which we have taken of the law does not, to some extent, prevent it.
We do not believe such a result was necessary or proper in the administration of this estate, nor do we believe that he was justified in pursuing the course he has pursued from the beginning to the end. He begins and ends his adminis *175 tration with litigation. He has needlessly kept it in court for nearly five years, and then seeks to charge the expenses he has incurred to a fund set apart for the payment of debts which the decedent owed in his life-time, and thus prevent the creditors from receiving a single dollar upon their claims. We believe it to be the duty of courts to allow executors and all others who have the official care of estates all just and reasonable expenses in their management, but we do not believe it to be their duty to permit an executor to transform an entire estate amounting to $2,214, into a bill of costs and expenses, and so leave nothing for the heirs or creditor's. Here is the condition of the estate as presented to us by the executor for settlement:

No debt of the decedent’s however, trivial, has peen paid, even his grave being paid for from the private purse of the widow. '
Such a result bears upon its face the stamp of mal-administration and bad faith; it shows that his services have been of no benefit to the estate, but on the other hand have been a positive and irreparable injury. Some higher court may enable us to see our way clear to turn the assets of this estate into a bill of costs, but until then we shall hold that it has not been legally or property administered, and that the account of such an executor for services and expenses ought to be cut down to such an amount as would fairly and reasonably pay for its proper administration. The sum of $247.06 is allowed for this purpose as per statement filed with the decision^
In conclusion we desire to call attention to another fact-in connection with the history of this case. From the time the executor commenced the discharge of his duties down to the end of these proceedings, he has kept no account of his services or expenses of his administration. His account for nearly $3,000 of alleged indebtedness of this estate to him is made up of diaries which he fails to produce for the inspection of the court or of parties interested in this proceeding, from entries made by his counsel in law registers and papers in his possession; from his memory of the various services he has performed and money expended, and from various other sources of information.
*176 An account thus kept or made up is suspicious upon its face, for it gives opportunity for mistake, and worse still, an easy method for fraud and dishonesty. We do not claim the executor has not rendered the services nor expended the money he has charged and testified to, but we claim he violated his duty to this estate by not keeping his accounts in the usual and regular manner. It should have been kept distinct from his dealings with others, in a book kept for that purpose, and in such a manner that persons interested in the estate could inspect them at any time if they desired to know its standing or condition. They should not have been so kept as to be the occasion of doubt and uncertainty and require a long contest in the courts to ascertain their truthfulness. No one need be learned in the intricacies of bookkeeping to keep the accounts of an estate in such manner that people unlearned in such matters can readily and without expense or assistance from counsel, know its true condition or make such investigation as they desire in regard to- it.
Nine days were spent in investigating the accounts of the executor, because of the manner in which he had kept them and the character of some of his claims, while in our judgment if he had kept his account, in a regular and orderly manner, setting down the items therein as -they occurred, there iieed not have been two days spent in submitting them to the court. We shall, therefore, not allow him for his own time or expenses, or for the expense of his counsel upon this accounting, more than would be reasonable for the time and labor spent in establishing an account kept and made out in such manner as the law requires. We decline to subject this estate to any expense for the carelessness and negligence with which he has kept the records of its business. We have no doubt that he, as well as his counsel, have spent the time charged in straightening out and making up his account, and believe the services were worth what has been charged, but out of his commissions or from some other source, it is his duty to pay'for preparing accounts thus kept, and not this estate.
The accounts of the executor will be settled in accordance with this decision and a decree entered accordingly.